C. L. HALL, Respondent, *vs.* N. BRAY, Appellant.

1. *Warranty, covenant of—Suit on—Eviction unnecessary, when.*—In a suit on a covenant of warranty where plaintiff holds by a title adverse to defendant, he will not be compelled to show an *eviction* in order to recover. If he prove that the title purchased was a good one and superior to his own, and that it was purchased at a fair and reasonable price, that is sufficient. The measure of damages in such a case is the amount paid for the outstanding title, if it does not exceed the price originally paid for the land.

2. *Constitution, special acts, when necessary,—Legislature must determine—Jasper County Common Pleas Court.*—The act creating the Common Pleas Court of Jasper county, (Sess. acts, 1869, p. 170,) is not in conflict with § 27, Art. 4 of the State Constitution by reason of being a special enactment. Whether such a court can be provided for by a "general law," is one to be determined by the legislature.

*Appeal from Jasper Common Pleas Court.*

*N. Bray, pro se.*

*L. P. Cunningham & J. F. Hardin,* for Appellant.

I. If a covenantee surrenders to one having a paramount title *after the person holding the paramount title has hostilely asserted the same,* he may maintain his action on the covenant in the deed but if he does so without actual eviction he takes on himself the burthen of proof that the covenantor at the date of the deed had no title, and this he must prove affirmatively. It is not enough that he show title in *another* person. (Rawle on Cov. of Title, 3d. Ed., § 249–50–51; *Ib.,* 265; More vs. Vail, 17 Ill., 190; Loomis vs. Bedell, 11 N. H., 74; Turner vs. Goodrich, 26 Vt., 709; Rawle on Cov. Tit., 228, 3d Ed.; Funk vs. Creswell, 5 Clark, Iowa, 89; Patton vs. McFarlane, 3 Penn., 419; Dickson vs. Vories, 7 Watts, L. S., 409.)

II. Plaintiff has purchased in what purports to be paramount title without being *disturbed.* "The title and the conveyants acquired are not disturbed by the mere existence of an outstanding paramount title, and he has no right to assume that it ever would be, until he actually feels the pressure upon him by a demand for possession, and a hostile assertion of that title."

III. That being the case the judgment of the court below must be reversed. (More vs. Vail, 17 Ill., 190; Hannah vs. Henderson, 4 Ind., 174; Stewart vs. West, 14 Penn. St., 338; Beebe,

vs. Swartwout, 3d Gilm., 179; Hagler vs. Simpson, 1 Busbee N. C., 386; Witty vs. Hightower 12 S. & M., 478; Burrus vs. Wilkinson, 31 Miss., 537.)

IV. In Kentucky it is held that the covenantee cannot hold the possession and sue on the covenant. He must place the covenantor where he found him if he intends to rely on the covenants in the deed. (Vanmeter vs. Griffith, 4 Dana, 97.)

V. The judgment in this case should be reversed. The petition does not state facts sufficient to constitute a cause of action. It is a well settled rule in pleading on a covenant in a deed for the sale of land, that an eviction must be averred (Chitty Plead., 543; Clark vs. McNulty; 3 Serg. & Rawle, 372; Paul vs. Witman, 3 W. & Serg., 410; Hannah vs. Henderson, 4 Ind., 174.) In this case it is not done according to any rule of pleading.

VI. This case cannot be sustained. The court in which the judgment was rendered had no jurisdiction over the defendant or the subject of the action. The act of the legislature of the State, constituting said court is unconstitutional and void, because it is not a general law, but is local and special in its nature and operation. A general law could have been made applicable to common pleas courts throughout the state. (§ 27, Art. 4, Const. of Mo.; Bacon's Ab. Vol. 9, 231; 3 Ind., 258; 4 Ind., 343; 5 Ind., 4 and *Id.* 557.)

VII. The act establishing the Common Pleas Court of Jasper county was affirmed on the 4th of March, 1869. (Sess. Acts, 1869, p. 170.) This act was amended and its powers largely increased by act of the General Assembly of the State, approved Feb. 1st, 1870. (Sess. Acts 1870, p. 197. See 4 Ind. 347-8; 5 Ind., 4.)

*W. H. Phelps,* for Respondent.

I. In an action on the covenant of seizin; it is not necessary to allege by way of breach an ouster or eviction. All that is necessary is to negative the words of the covenant. (Sedgw., Meas. Dam., 3d Ed., 181; 4 Kent Com., 479; Rawle on Cov., 53, 54, 55; 14 Johns. 248.)

II. Where the vendee has bought in an outstanding title,

the measure of damage is the amount paid for the title outstanding, if it does not exceed the purchase money paid by the vendee to the vendor. (Lawless vs. Colier's Ex., 19 Mo., 480; Collier vs. Gamble, 10 Mo., 467.)

Vories, Judge, delivered the opinion of the court.

This action was brought by Hall against Bray to recover damages for the breach of the covenant of seizin, created by the words "grant, bargain and sell," contained in a deed executed by Bray to Hall, the plaintiff, on the 4th day of February, 1868, conveying to Hall a tract or lot of land described as lot numbered ten, in the town of Carthage in Jasper county, Missouri.

The breach assigned in the petition is "that at the time of the execution and delivery of the deed, the defendant was not seized of an indefeasable estate in said lot; that one Ethelbert Bright held an outstanding and paramount title to the same;" that in order to the perfection of plaintiff's title he was compelled to and did buy in said outstanding title, for which he paid six hundred dollars.

Judgment was asked for four hundred dollars and interest, the amount charged to have been paid by the plaintiff to the defendant for the lot.

The answer admits the conveyance of the lot as stated in the petition, but denies that the defendant was not at the time the owner of the lot in fee simple; states that at the time of the conveyance he was in the possession of the lot; that he then put plaintiff into the peaceable and uninterrupted possession thereof; and that plaintiff, together with those holding under him, has continued in said possession, and that on the 7th day of October, 1868, plaintiff sold and conveyed said lot to one John A. Carter, who then entered into the possession of said lot under said purchase, and that plaintiff and those claiming under him, are still in the peaceable and uninterrupted possession of said lot, their possession and right having never been questioned. The answer also denies the title of Bright, or that any other person ever had or held an outstanding or paramount title to said lot, or that plaintiff was compelled to, or did, purchase in the same.

A replication was filed to this answer, by which plaintiff denied that the defendant at the time of the conveyance was in the possession of the lot, or that he then put plaintiff in possession, or that plaintiff sold and conveyed the lot to said Carter, or that the title to the lot had never been questioned.

A trial was had before the court no jury being required by the parties.

It is conceded by the appellant, that the plaintiff on the trial showed title to the lot in one Ethelbert Bright, and a conveyance of the lot from Bright to W. H. Phelps, and from Phelps to one John A. Carter, for the east half of the lot, and from said Carter to Hall, the plaintiff; it is also shown by the evidence that plaintiff paid Carter $433 29 for the east half of the lot, and that said east half was reasonably worth from six to seven hundred dollars.

On the part of the defendant it was shown on the trial, that plaintiff after his purchase from defendant at once took possession of the lot by virtue of the purchase, and that he and those claiming under him had continued to hold and occupy said lot ever since.

The defendant also read in evidence a deed from plaintiff to John A. Carter, dated October 7th, 1868, by which the plaintiff conveyed to Carter the east half of said lot for two thousand dollars.

This being all of the evidence offered by either party, the Court at the request of the plaintiff, declared the law to be:

"That if the defendant conveyed said lot to plaintiff by deed containing the covenants of an indefeasable estate in fee simple, and at the time of the execution of said deed there was an outstanding title which plaintiff was required to buy in in order to perfect his title, and that plaintiff did so purchase said outstanding title, he is entitled to recover the amount paid for said title, if the amount is not more than the property is reasonably worth, provided it does not exceed the amount paid by plaintiff to defendant for his deed to said lot."

To this declaration of law the defendant excepted.

The defendant then requested the Court to declare the law to be :

" That under the evidence in this case the plaintiff can only recover nominal damages."

The Court refused this declaration of law and the defendant again excepted.

Judgment was then rendered for the plaintiff for the sum of $447 75. The defendant filed his several motions for a new trial and in arrest of judgment, which being severally overruled, he again excepted and appealed to this Court.

It is contended by the appellant in this Court that to entitle the plaintiff to recover in this case, it was necessary for him to have alleged in his petition and proved on the trial, an eviction, or at least he should have shown facts amounting to a constructive eviction; and it is further insisted that no such evidence was given on the trial of the cause, and that there were no sufficient allegations of eviction in the petition to authorize a recovery; that the Court below therefore erred in giving and refusing the declarations of law given and refused, and in overruling appellant's motion in arrest of the judgment.

We do not agree with the appellant in reference to these objections. The law has been well settled in this State, as well as by other authorities, that where the title conveyed has been defeated and the grantee holds by a title adverse to that acquired from his grantor, it is not necessary to submit to the form of an eviction in order to entitle the party to recover full damages for a breach of the covenant of seizin. The covenant of seizen, if broken, is broken as soon as made, and where the grantee or covenantee purchases in an adverse title, the measure of damages is the amount paid for the outstanding title, if it does not exceed the price originally paid for the land. It of course devolves on a covenantee who purchases in an adverse title without suffering an eviction, to take upon himself the burthen of proving that the title purchased is a good title and that it was purchased for a fair and reasonable price. The law on this subject is ably discussed in the case of Lawless vs. Collier's Executor, 19 Mo., 480; also in the case of Dickson vs. Desire's Administrator, 23 Mo., 157; 10 Mo., 466. To the same effect is the case of Abbott vs. Allen, 14 Johns., 247; Sedgw. Meas. of Damages 181.

In the case under consideration the outstanding title had been sold and conveyed several times within the last few months before plaintiff purchased. This was a sufficient assertion of an outstanding and adverse right to authorize the plaintiff to protect himself by a purchase, without waiting for an eviction; but of course in such case, he purchases at his peril, and must be prepared to show that the title purchased is a real one, and superior to the title conveyed by the defendants, and that the purchase was for a reasonable price. (Rawle on Cov., 291-292; Loomis vs. Bedel, 11 N. H., 74.) The petition in this case is fully sufficient and even shows who holds the adverse title, which was not necessary.

The appellant next contends that his motion in arrest of the judgment, should have been sustained, on the ground that the act of the legislature creating the Court of Common Pleas of Jasper County is unconstitutional, being violative of the 27th section of the 4th Article of the Constitution of this State.

This section, after prohibiting the General Assembly from passing special laws for several enumerated purposes, proceeds as follows:

" That the General Assembly shall pass no special law for any case for which provision can be made by a general law; but shall pass general laws providing, so far as it may deem necessary, for the cases enumerated in this section, and for all other cases where a general law can be made applicable."

The law creating the Court of Common Pleas of Jasper County does not fall within any of the enumerated acts prohibited by the Constitution; but if it is prohibited at all, it is by this last general clause, prohibiting special laws where a general law can be made applicable. The question naturally arises who shall decide whether a general law can be made applicable or will answer the purpose intended?

This question has been directly passed on by this court in the case of the " State on the relation of Henderson vs. The County Court of Boone County, (50 Mo., 317) as well as in several other cases.

In the opinion of Judge Adams, in the case referred to, he

uses the following language : "But who is to decide when a general or special law will answer the best purpose ? It strikes me that this rule in reference to general or special laws is laid down as a guide for the legislature, and the legislature is to judge of the necessity of the particular case. The legislature is quite as able to do this as the courts. The legislature must in the first instance, exercise their discretion as to the necessity of a special instead of a general act. How can the courts control that discretion ? If a discretion be conceded at all, in my judgment the courts have no right to control it.

"It is agreed that there is no discretion in regard to the passage of certain enumerated laws. They are inhibited by the letter of the Constitution. When the legislature undertakes to pass these inhibited laws, it is the plain duty of the courts to declare them unconstitutional. But here we are asked to pronounce upon the necessity of a law, and whether it can be better supplied by a general law than a special act.

"This is the exercise of the discretion of the courts to control the discretion of the legislature."

This Court has since, at the October term, 1872, in the case of the State ex rel., Robbins vs. New Madrid County, ante,82, re-affirmed the doctrine of the Boone County case, and held that it was the province of the legislature and not of the courts, to judge of the necessity of special law, and whether a general law would be applicable.

A different doctrine was held in the case of Thomas vs. The Board of Commissioners of Clay County, (5 Ind., 4) which is so earnestly relied on by the appellants ; but in the later case Gentile vs. The State, (29 Ind., 409,) the whole question is reviewed and the case of Thomas vs. The Board of Commissioners, &c., directly overruled and the doctrine is fully sustained that the legislature is the only judge of the necessity for a special act ; in a case deemed to be exactly the same in principle with the one under consideration.

The act of the legislature, creating the Court of Common Pleas of Jasper County, being so much the same, at least in principle, as those acts which have been passed on by this court, it would seem that the question has been finally settled in this

State so as to preclude further controversy on this subject.

The other judges concurring, the judgment of the court be-, low is affirmed.